See Smith v. Miln [Case No. 13,081].

———

SHOREY (UNITED STATES v.). See Cases Nos. 16,280–16,282.

———

## Case No. 12,808.

### SHORNER'S CASE.

[1 Car. Law Repos. 55.]

District Court, D. Pennsylvania. Oct., 1812.

ENLISTMENT OF MINORS IN THE ARMY — CONSENT OF PARENTS—WIDOWS.

[The word "parent," as used in the proviso to the 11th section of the act of January 11, 1812 (2 Stat. 672), which forbids the enlistment of any minor without the consent of his "parent, guardian, or master," includes the mother where the father is dead and there is no guardian or master; and in such case an enlistment without her consent is void.]

In the case of Shorner it was agreed that the following case should be submitted to the district judge for decision as upon a writ of habeas corpus:

J. Shorner is a minor, between nineteen and twenty years of age. He had been bound apprentice to two successive masters, but both indentures had been cancelled, and he has since worked as a journeyman, on his own account, always applying his wages to his own use, without rendering any account of them to his mother, who was still living, though his father was dead. He has no guardian. He enlisted as a soldier in the army of the United States, without the knowledge of his mother.

The question submitted for the decision of the judge was whether the enlistment is valid, under the 11th section of the act of congress passed the 11th of January, 1812. The section is in these words: "That the commissioned officers who shall be employed in the recruiting service shall be entitled to receive, for every effective able man, who shall be duly enlisted by him, for the term of five years, and mustered (and between the ages of eighteen and forty-five years) the sum of two dollars: provided nevertheless, that this regulation, so far as respects the age of the recruits, shall not extend to musicians or to other soldiers who may re-enlist into the service: and provided also, that no person under the age of twenty-one years, shall be enlisted by any officer, without the consent in writing of his parent, guardian, or master, first had and obtained, if any he have," &c.

Mr. Dallas, as district attorney, promised that, having been requested by a respectable officer to give an opinion upon the present question, he had thought better to submit it to the judge, in order to fix the rule, whatever way it was established, upon the basis of judicial authority. He admitted that in common speech and in the English dictionaries the word "parent" embraced both father and mother; but that it had required a more limited meaning in legal contemplation, and was (as Jacob, in his Law Dictionary, states) "generally applied to the father." It was, therefore, important to ascertain the sense in which congress had used the words; and for argument, by way of illustration, Mr. Dallas considered the legal relation of father and mother to the child, independent of natural ties, at the common law and upon positive statute; concluding that the act of congress deemed the age of eighteen a competent age for entering into the contract of enlistment, the minor must establish upon plain reason the exception which authorises him to annul it.

Mr. Chauncey, on the other hand, contended that the word "parent" was used by congress in the admitted popular sense; that the distinctions between the mother and father at common law were founded upon feudal principles, which could not apply there; and that every inducement to subject a minor to the advice, countenance, and control of a father, would apply, upon his death, with additional force, to the case of the surviving "parent" or mother.

PETERS, District Judge. I have resolved in my mind the arguments of the counsel on both sides of the question submitted to my decision, as stated in the foregoing case. It does not seem to me to be necessary to discuss the common law points adduced to show that the mother is not in such degree of consanguinity or relationship to, or vested by the common law with the control over the son in his nonage and after the period of nurture, as to render her consent necessary to the binding force of engagements, or to exercise authority over his actions. Those points are grounded very much on the principles of feudal institutions, which, favoring and protecting the claims of primogeniture, distinguish between the rights and duties even of a father in regard to his eldest son and apparent heir, and of that son towards him; and these as they respect the younger children. The greatest part of those principles are inapplicable in this country, though it is our habit to regard them; and are, in many instances, opposed to the principles both of reason and nature, as the latter are felt and practiced upon here. Women, in ages in this

regard barbarous, were treated as mere breed-ers and nurses, held in slavish subjection, and denied the proper and necessary author-ity over their offspring.

In the act of congress relative to naval en-listments the words are dissimilar on that subject from those in the act relative to sim-ilar engagements in the land service. The words which have been the subject of dis-cussion, are: "Provided always, that no per-son under the age of twenty-one years shall be enlisted by any officer or held in the serv-ice of the United States, without the consent in writing of his parent, guardian or master, first had and obtained, if any he have." Now, whatever rights or disabilities an in-fant may or may not have or be subjected to, or whatever may be the relationship or power of a mother at common or civil law, I cannot conceive that she is not described in this act of congress so distinctly by the term "parent" that it would be a violation of all rational construction to say that she must be excluded from this statutory regula-tion. If the inconvenience to the service is found so important as it had been stated to be by the counsel who advocates the legality of the enlistment, let congress model the reg-ulations in future so as to exclude the mother by declaring that by the term "parent," only the father is meant to have authority in any case, where there is not either guardian or master; and of course it will then follow that when a youth has neither father, guard-ian, or master, that he may, as in this case, have a "parent" remaining,—that is, his moth-er.—and yet he must be left to his own will, without control over any of his actions, with-out a friendly monitress to check his indis-cretions: or cherish and invite his return to prudence and safety.

Whether the enlistment in this case be or not discreet and proper, I will not undertake to determine. But it appears to me that the only remaining "parent" of this young man, who has neither "guardian" nor "master," has a right, by the feelings and affections of a mother, to pass an opinion and to use a discretion on the subject. Whether she will or will not exercise this right wisely must be left to herself, and those who will advise her for the best. General principles cannot be warped to suit a particular case. It is a cold and cheerless submission to and unnec-essary extension of the rude and rigorous principles of black letter jurisprudence to say that because the mother is not entitled to, and cannot sue for amends for loss of service of the son (yet by the law of Pennsylvania he is obliged to assist in her support), she may not interfere in what regards his welfare and happiness. If we take Lord Coke's advice, and place ourselves in the situation of the legislators when they passed the proviso in question, I think we may safely conclude that few of them knew and none of them thought of the learned lore which the books contain on the subject of paternal guardianship and

power over the son and his affairs, or ma-ternal disabilities and exclusions from such concerns. No doubt, if the father were liv-ing, the mother would not be the "parent," whose "consent in writing" would be re-quired. But in this case, when he is dead, a "parent" is still left to satisfy the words of the law, "if any he have."

In the light in which I view the law and case. I cannot but consider the enlistment as invalid.